[Civil No. 2327.    Filed December 10, 1925.]

[241 Pac. 515.]

SECURITY TRUST AND SAVINGS BANK, a Corporation, Appellant, v. ARNALDAS H. McCLURE and MIRIAM E. McCLURE, Husband and Wife, Appellees.

1. QUIETING TITLE—TITLE MAY BE QUIETED AS AGAINST JUDGMENT.— A suit to quiet title will lie as against a judgment.

---

1. Quieting title against judgment, see notes in 45 Am. St. Rep. 377; 7 Ann. Cas. 335; 22 L. R. A. 705. See, also, 5 R. C. L. 658.

2. JUDGMENT—CONVEYANCE SUBJECT TO JUDGMENTS OF RECORD ARE SUBJECT ONLY TO VALID JUDGMENTS.—Conveyance expressly subject to lien of all mortgages, attachments and judgments of record is subject only to such judgments of record at time of transfer as are valid liens.

3. EQUITY—VERDICT IN EQUITY CASE ADVISORY ONLY.—Verdict of jury in equity case is advisory only, and not binding, and, where evidence is conflicting, trial judge may substitute his own conclusion for that of jury.

4. MORTGAGES—DEFENDANT ESTOPPED BY HIS SUIT AGAINST PROPERTY OWNERS AS RESIDENTS FROM SUBSEQUENTLY DENYING THEIR RESIDENCE.—Where creditor obtained judgment foreclosing mortgage after service as on residents, and property owners filed declaration of homestead the day following the service, in subsequent suit by purchaser who redeemed the property to quiet his title, creditor *held* estopped by the judgment-roll in his former suit from denying that at time of declaration of homestead owners were residents.

5. HOMESTEAD—JUDGMENT LIEN ON PROPERTY DECLARED HOMESTEAD HELD NOT TO REVIVE ON SALE TO THIRD PARTY.—Where property is declared homestead, a judgment lien thereon is not merely suspended, and does not revive upon sale of land to a third party, in view of Civil Code of 1913, paragraph 3288.

6. EQUITY—AGREEMENT TO PAY DEBT AS PART OF PURCHASE PRICE MUST BE FULFILLED TO SECURE EQUITABLE RELIEF.—Where purchaser agreed to pay certain sum to creditor of vendor as part of purchase price, he must fulfill agreement, even though it is not legally enforceable, before equity will quiet title as against that creditor.

7. EQUITY—HE WHO SEEKS EQUITY MUST DO EQUITY.—He who seeks equity must do equity

8. EQUITY—ALL EVIDENCE MUST BE GIVEN TO JURY, THOUGH VERDICT ADVISORY.—In view of Civil Code of 1913, paragraph 508, although verdict of jury in equity case is merely advisory, jury must be given all the evidence which the court may use, in order that it may give such advice intelligently.

9. APPEAL AND ERROR—NEW TRIAL NOT GRANTED, WHERE EVIDENCE CONSIDERED BY COURT, AFTER WITHHOLDING IT FROM JURY IN EQUITY, CONCLUSIVELY ESTABLISHED ONLY ISSUE OF FACT.—In an equity case, though court may not reverse its rulings and admit for its own consideration evidence not submitted to jury, where

3. See 10 R. C. L. 534.

7. See 10 R. C. L. 392.

the effect of such admission was to establish as a matter of law the only issue of fact for jury, appellate court will not order general new trial.

See (1) 32 *Cyc.*, p. 1324, n. 29.   (2) 34 **C. J.**, p. 571, n. 13.   (3) 21 **C. J.**, p. 595, n. 85; 29 **C. J.**, p. 815, n. 20.   (4) 21 **C. J.**, p. 1228, n. 69; 34 **C. J.**, p. 927, n. 96.   (5) 29 **C. J.**, p. 873, n. 29, p. 920, n. 44.   (6, 7) 21 **C. J.**, p. 172, n. 13, p. 180, n. 76; 32 *Cyc.*, p. 1379, n. 82.   (8, 9) 4 **C. J.**, p. 1194, n. 86; 21 **C. J.**, p. 592, n. 16 New.

APPEAL from a judgment of the Superior Court of the County of Yuma.   Fred L. Ingraham, Judge. Cause reversed and remanded with instructions.

Mr. Glenn Copple and Mr. Earl Anderson, for Appellant.

Mr. William H. Westover and Mr. A. J. Eddy, for Appellees.

LOCKWOOD, J.—H. T. Riley and wife were the owners of lot 7, block 110, of the city of Yuma.   During the month of March, 1923, they entered into negotiations with Arnaldas H. McClure and Miriam E. McClure, his wife, hereinafter called plaintiffs, in regard to the purchase by plaintiffs from the Rileys of the above-described property.   It appears that at this time there was a mortgage on the premises in favor of the Security Trust & Savings Bank, a corporation, hereinafter called defendant, and also that defendant had on March 9th secured judgments against H. T. Riley and others amounting to some $2,000.   In addition to that, Riley was indebted to several other parties, including plaintiff McClure.

On March 16, 1923, the Rileys filed a declaration of homestead on the property in question, but, there apparently being some doubt in their minds as to the validity of this declaration, they filed another on March 20th, which was unquestionably valid, if they were then residents of Arizona.   In the meantime

McClure had visited the different creditors of Riley, and, according to his own statement, had made arrangements to compromise the debts for various amounts below their face value, so that he could get a clear title to the property, and upon March 23, 1923, the Rileys deeded the premises to the McClures. Said deed was in the regular form and duly acknowledged, but contained the following clause:

"Subject to the lien of all mortgages, attachments, and judgments of record."

McClure satisfied all of the Rileys' indebtednesses, with the exception of the judgments in favor of the Security Trust & Savings Bank, but some difficulty arose later as to the terms of the settlement with the bank, and the parties could never come to an agreement as to the amount which McClure had actually promised to pay.

Thereafter plaintiffs herein filed this suit to quiet title to their premises as against defendant. The latter answered, setting up the stipulation to pay all mortgages, attachments, and judgments of record above set forth, and also defendant's judgments in various cases, and that they had not been paid, and alleging that the homestead declaration, made by the Rileys and above referred to, was invalid for the reason that his family were not, at the time of filing the same, residents of the state of Arizona.

The case was tried before a jury, which answered the only interrogatory submitted to them, which is as follows: "Did the family of H. T. Riley and Anna Riley reside within the state of Arizona on the 20th day of March, 1923?" in the negative, and the jury was discharged. Counsel for defendant three weeks later moved for judgment, which motion was taken under advisement. It appears that during the trial of the case plaintiffs offered in evidence the judgment-

roll of civil case No. 4019, entitled *"Security Trust & Savings Bank* v. *Riley et al.,"* which offer was objected to and the objection sustained by the court, but, after the case was submitted on the motion for judgment, and five weeks after the jury had been discharged, the court was of the opinion that it had erred in rejecting the offer, reversed its ruling and admitted the judgment-roll, set aside the verdict of the jury as advisory, and entered judgment for the plaintiffs.

This judgment-roll shows that the suit was for the foreclosure by defendant herein of its mortgage on the property hereinbefore mentioned, and that summons was made upon the Rileys, as shown by the following return:

"By delivering to Anna Riley at the residence of H. T. Riley, on Sixth avenue, who is over the age of sixteen years, at the county of Yuma, state of Arizona, a copy of said summons. . . . "

This service was made on the nineteenth day of March, 1923, and upon it the defendant secured its decree of foreclosure, and plaintiffs afterward redeemed the land.

A motion for new trial was duly made and overruled, and defendant has appealed to this court.

There are some ten assignments of error which we will discuss according to the legal proposition raised thereby. The first proposition is that a suit to quiet title does not lie as against a judgment. This contention has been determined adversely to defendant by this court in the cases of *Union Oil Co.* v. *Norton Morgan Commercial Co.,* 23 Ariz. 236, 202 Pac. 1077, and *Cosper* v. *Valley Bank,* 28 Ariz. 373, 237 Pac. 175.

The second point is that plaintiffs took the property expressly "subject to the lien of all mortgages, attachments, and judgments of record," and, since the

judgment liens of defendant were unquestionably of record at the time the transfer was made, the land was still subject to them. Unless it shall appear that the judgments were actually at the time of the transfer valid liens on the property, this has also been decided adversely to the contention of defendant by this court in the case of *Sherman* v. *Goodwin,* 12 Ariz. 42, 95 Pac. 121, and plaintiffs may therefore show, if they can, in this proceeding that for any reason the liens were not valid.

This brings us to the most important question, whether or not the declaration of homestead made by the Rileys on March 20th, 1923, freed the property from the lien of the judgments. It is admitted that this declaration was in proper form, and was effectual if at the time Riley's family resided within the state of Arizona. This issue was submitted to the jury on the evidence which was at that time admitted by the court, and the jury found against the alleged residence. If this finding is accepted as conclusive, there is no question but that the judgment must be reversed, for the only reason it is claimed the judgments were not valid liens is that they were set aside, so far as this particular land was concerned, by the declaration of homestead. The verdict of the jury in an equity case is advisory only, and not binding, and since the evidence was in conflict upon this point, the trial judge had the right to substitute his own conclusion for that of a jury. *Donahue* v. *Babbitt,* 26 Ariz. 542, 227 Pac. 995; *Miller* v. *Thompson,* 26 Ariz. 603, 229 Pac. 696.

However, it appears from the record that the trial judge based his judgment, not upon a determination of fact that the Riley family did actually reside in Arizona, but on the theory that defendant was estopped from denying their residence. The basis of this conclusion of estoppel was the record in case

No. 4019, *supra,* which was offered in evidence and rejected during the trial of the case, but was afterwards considered by the court upon the final determination.

Briefly stated, that record shows that the judgment obtained therein by the defendant in this case against the Rileys was based on the proposition that the Rileys, on the nineteenth day of March, 1923, were residents of the state of Arizona. If on that date they were not such residents, the judgment was void. It is the claim of plaintiffs herein that defendant having adopted the position in that case that the Rileys were residents of Arizona, and plaintiffs as Rileys' grantees having acquiesced in such contention and redeemed the property under the foreclosure in such suit, that defendant is now estopped from maintaining the Rileys were not residents of Arizona on the succeeding day, the 20th of March, there being no claim their residence was changed overnight. We are of the opinion that plaintiffs' position on this point is well taken. As is said by the Supreme Court of the United States, in *Davis* v. *Wakelee,* 156 U. S. 680, 39 L. Ed. 578, 15 Sup. Ct. Rep. 555:

"It may be laid down as a general proposition that, where a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."

In this case, defendant having taken the position that on the nineteenth day of March the Rileys were residents of Arizona, and plaintiffs having acquiesced in such contention, and paid out large sums of money on the basis thereof, it would be contrary to the first principles of justice that defendant may now in a suit relating to the very same property take a con-

trary position to the injury of plaintiffs herein. We therefore hold that as a matter of law upon the judgment-roll in case No. 4019, *supra,* defendant was estopped from in this case claiming the Rileys were not residents of Arizona when they filed their declaration of homestead. Such declaration destroyed the lien of the judgments, at least so long as the Rileys themselves owned the property.

But, it is said, such exemption did not apply when the Rileys sold the property, and that the lien was merely suspended during their ownership and revived when the property passed from their possession. We do not think this last position can be maintained. It will be observed that under paragraph 3288, Revised Statutes of Arizona of 1913, Civil Code, the homestead is not necessarily the dwelling-house in which the claimant resides, but may be entirely different and distinct land, so long as it is compact in form, and does not exceed the value of $4,000. It is evident from the language of this statute that, as is stated in *Union Oil Co.* v. *Norton Morgan Commercial Co., supra*:

"We think the dominant idea under our law is to save exempt to the family the amount of money therein designated as the value of a homestead."

If such be the case, since to hold that a sale of the homestead revived any judgment liens on record against its owner and declarant, and made them a lien upon the property in the hands of the purchasers, would be to destroy the value of the property as money, and make it worthless to the family except for the purpose of residence, we are of the opinion that the judgments upon which defendant relies cannot be set up as valid liens against the property, even after it is sold by the declarant.

There is but one question of importance remaining for consideration. It is said that, since plaintiffs by

their own statement agreed to pay a certain sum to defendant as part of the purchase price of the real estate, equity will not interfere to quiet their title until they have complied with their promise. The record shows that plaintiffs did agree to pay some amount, but there is a disagreement as to how much, nor have plaintiffs made and kept alive a tender of what they claimed to be the amount due. It is a fundamental principle of equity that "he who seeks equity must do equity." If, as a matter of fact, plaintiffs did agree to pay a certain amount as part of the purchase price for the land, which sum was to be paid to defendant herein, we think it but equitable that they should carry out their agreement, and it is not claimed that they have done this, although it is intimated that at one time plaintiffs offered what they thought was the amount due, which was rejected by defendant on the ground that it was not the sum agreed upon.

Before a court of equity will lend its aid to a plaintiff to quiet his title to a certain piece of land, he must pay to the defendant any indebtedness equitably due, even though the latter might not have been legally collectible. *Provident Mutual B. L. Assn.* v. *Schwertner,* 15 Ariz. 517, 140 Pac. 495.

We do not wish to be understood as holding a trial court has the right to reverse its rulings and admit for its own consideration evidence which was not submitted to the jury, even in an equity case. Although the verdict of a jury in such a case be merely advisory, yet a litigant has the right to insist that the court shall listen to the advice, though he need not take it. Paragraph 508, Civil Code, Revised Statutes of Arizona of 1913. And it naturally follows that the jury must be given all the evidence which the court may use, in order that they may give such advice intelligently.

But in this case, since the effect of the admission of the judgment-roll would be to establish as a matter of law that the only issue of fact for the jury was the amount plaintiffs had agreed to pay defendant, we see no use in ordering a general new trial as to facts which are conclusively established by law.

For the reasons set forth in the foregoing opinion, the judgment of the trial court is reversed and the cause remanded, with instructions to grant a new trial solely for the purpose of determining what amount plaintiffs agreed to pay defendant in settlement of the judgments referred to, and upon such determination, if within thirty days thereafter plaintiffs shall pay into court for defendant the amount so determined, less anything already paid thereon, to render judgment quieting their title to the premises in controversy, but, if plaintiffs shall not make such payment, to render judgment in favor of defendant.

McALISTER, C. J., and ROSS, J., concur.