No. 20640.

ARTHUR J. WATSON *v.* THE PEOPLE OF THE STATE OF COLORADO.

(394 P.2d 737)

Decided August 10, 1964.

358

Mr. Jim R. Carrigan, for plaintiff in error.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank E. Hickey, Deputy, Mr. John E. Bush, Assistant, Mr. John P. Moore, Assistant, for defendant in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the Court.

We will refer to plaintiff in error as defendant or by name. This action is here on writ of error directed to a judgment which imposed a sentence of life imprisonment on the defendant following a trial in which a verdict of guilty on a charge of first degree murder was entered. This is the second time that the facts involved in this case have been before this court. In *Kostal and Watson v. People,* 144 Colo. 505, 357 P.2d 70, a new trial was ordered. For a statement of facts forming the basis of the murder charge we refer to that case.

Watson now seeks reversal of the judgment entered following his second trial and as grounds therefor contends:

1. That the trial judge was shown to have an interest in the case and should have sustained defendant's motion to disqualify himself.

2. That defendant requested the production of certain

statements made by eyewitnesses to the alleged crime, and that the trial judge erred in failing to order immediate production thereof for defendant to use in the cross-examination of those witnesses.

3. That testimony of an unrelated crime was admitted and considered by the jury over objection of defendant.

4. That the trial court erred in admitting in evidence the circumstances surrounding the arrest of defendant in Detroit, Michigan.

5. That the trial court erred in admitting into evidence two 45-caliber cartridge casings in connection with testimony given by ballistics experts.

6. That the trial judge erred in denying defendant's request for the appointment of psychiatrists, investigators, and ballistics experts in equal numbers to those used by the state.

7. That, taken as a whole, the state's evidence relating to firearms identification and ballistics is in such a state of conflict and confusion that it should have been taken from the jury.

8. That the failure of the trial judge to grant defendant's motion for a directed verdict of acquittal was error.

9. That the state failed to sustain its burden of proof.

In connection with the above mentioned first ground urged for reversal, two motions were filed seeking to disqualify Judge Christian D. Stoner from presiding at the trial. One supporting affidavit was signed by Watson and another was a joint statement by Watson and his co-defendant Kostal. The only statement contained in these affidavits warranting mention in this opinion was the assertion that an action was pending in the district court of the United States in which Watson as plaintiff sought damages against Judge Stoner as defendant. The claim was based on the allegation made by Watson that Judge Stoner and the district attorney, in the performance of their official duties connected with the first trial, conspired to deprive defendant of

a fair trial, pursuant to which conspiracy Watson alleged that Judge Stoner participated in the subornation of perjured testimony, the suppression of evidence vital to his defense, and the admission of evidence of other offenses committed by him.

In disposing of this ground for reversal we think it sufficient to say that an adverse interest sufficient to disqualify a trial judge from presiding at the trial of a criminal case must be based on a more substantial foundation than appears from the record in this case. The action instituted against Judge Stoner by defendant was filed in the Federal District Court of Colorado. It was dismissed, and Watson appealed to the United States Court of Appeals for the Tenth Circuit where the action of the Federal District Court was affirmed. See *Kostal and Watson v. Stoner, et al.,* 292 Fed. (2d) 492. The contention of Watson is that Judge Stoner, who presided at the first trial, is answerable to him in damages for errors committed in that trial which resulted in a reversal, and that the pendency of the action for damages created an adverse interest which should have prevented Judge Stoner from hearing the second trial.

We are thoroughly familiar with the record in the first trial and although error was committed which required a reversal, there was nothing to indicate any bias or prejudice on the part of the trial judge. The applicable rule is stated in 30A Am. Jur. p. 68, § 113, as follows:

"A judge made a party for the mere purpose of disqualifying him is not thereby effectively joined, and thus is not disqualified. The filing of sham or frivolous pleading in which a judge is made a party for the sole purpose of disqualifying him should not be allowed. But a pleading is not to be deemed sham or frivolous merely because it would probably be held bad on demurrer. Rather, a sham or frivolous pleading in this sense is one so palpably and manifestly false on its face

as to leave no room for doubt thereof, and of such a character that the court may on a mere inspection pronounce it to be indicative of bad faith."

Another pertinent principle is to be found in 30A Am. Jur. p. 64, § 101, as follows:

"To work a disqualification of a judge, the interest must be a direct, certain, and immediate interest, and not one which is indirect, contingent, incidental, or remote. Thus, a direct, apparent, substantial, immediate, or certain interest in the subject matter of the action disqualifies a judge, while an indirect, remote, unreal, uncertain, speculative, incidental, inconsequential, contingent, or merely theoretical, possible, or unsubstantial interest in it does not disqualify him. * * *"

We quote from *Kostal and Watson v. Stoner, et al.,* supra, the following:

"* * * The case was admittedly within the jurisdiction of the court over which the defendant judge presided * * *.

"We have held that the Civil Rights Act does not impair the traditional common law immunity of judges from personal liability in damages for their official acts in matters within their jurisdiction. * * *"

To create an adverse interest sufficient to disqualify a trial judge from presiding over a criminal trial a suit brought against him by the accused person must have some probability of success. In the instant case there is no such showing and it appears on the face of the complaint that it is a sham pleading "so palpably and manifestly false on its face as to leave no room for doubt thereof."

■ Defendant argues that the trial court erred in refusing to require the production of certain statements made to the police by eyewitnesses to the crime. The record does not disclose any such refusal. Moreover the complete transcript of evidence taken at the first trial was available to defendant and he knew the full substance of those statements. In the instant case the wit-

nesses who made said statements were thoroughly and ably cross-examined with reference thereto, as well as to all prior utterances made by them to the police and investigating officers. As soon as it was learned from whom the statements could be obtained, the court ordered and obtained their production into court, after which defendant made no move or expressed no desire to further cross-examine those witnesses.

■■ There is no merit to the contention that the trial court erred in its failure to grant defendant's motion for the appointment of experts. A well qualified ballistics expert was appointed for the defendant and in practically all particulars he agreed with the ballistics experts used by the state. The record discloses that defendant's counsel was not wanting in technical information with which to test the testimony of the experts called by the people. We know of no authority supporting the contention that defendant should have been furnished with a psychiatrist to explain his motive for attempting to escape or fleeing from arrest; nor do we know of any authority supporting the contention that the court was obligated to appoint an investigator for defendant.

The other points raised by the defendant are without merit and no good purpose would be served by further comment in connection therewith. Upon the whole record we are convinced that defendant had a fair and impartial trial; that the verdict was fully justified under the evidence; and that the law was correctly applied.

The judgment is affirmed.

MR. JUSTICE DAY not participating.